THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT F. McCAIN, Defendant-Appellant.

Second District   No. 2—92—0942

Opinion filed August 5, 1993.

Donahue, Sowa & Bugos, of Geneva, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Robert F. McCain, entered a plea of guilty in the circuit court of Kane County to one count of possession of a controlled substance containing cocaine with intent to deliver in an amount of more than 15 but less than 100 grams (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))) and was sentenced to 13 years' imprisonment. Defendant filed a timely appeal from his sentence, asserting that the trial court abused its discretion by considering improper factors in aggravation and failing to give proper weight to defendant's rehabilitative potential.

The facts relevant to the issues are as follows: As the result of an ongoing investigation involving agents for the Federal Drug Enforcement Agency and local police personnel, defendant was arrested on January 20, 1991. At the time of his arrest, defendant was in possession of two handguns, an electronic pager, a cellular telephone, approximately $550, and a clear plastic baggie wrapped in masking tape.

The baggie contained two separate packages of a white powdery substance weighing 305.5 and 626.3 grams, respectively. The substance in each package was determined to be cocaine. A plea agreement was reached that allowed defendant to enter an open plea to the charge of possessing, with intent to deliver, between 15 and 100 grams of a controlled substance containing cocaine, but permitting the State to argue the actual amount of cocaine seized as an aggravating factor. All other charges were dismissed pursuant to the plea agreement.

The State called Officer Wayne Biles of the Aurora police department to testify at the sentencing hearing. Biles described his involvement in defendant's arrest. Biles stated that, in his capacity as an undercover narcotics investigator, he had experience in purchasing cocaine. He stated that cocaine commonly sold on the street at $100 a gram. Biles testified that electronic pagers and cellular phones were used by drug dealers and their clients as a form of communication.

After his arrest, defendant was interrogated by Biles and a Federal drug enforcement agent. Defendant stated that he purchased his cocaine from Marcos Martinez, and in the past he had purchased cocaine in amounts between three ounces (approximately 84 grams) and 250 grams. Defendant stated that he and Martinez had planned to deliver five kilograms of cocaine during the previous week at a price of $29,500 per kilogram, but that for some reason the delivery did not occur. Defendant also told Biles that Martinez had a deal pending to receive 100 kilograms of cocaine from his "source." Defendant described the car driven by Martinez' drug source and stated that it had a secret compartment. Biles testified that drug dealers had been known to use secret compartments in cars to store cocaine. Defendant also admitted that he was approached by an individual named David Catalano who wanted to sell cocaine for him. Biles stated that defendant was cooperative with the investigation and had provided names of people involved in narcotics transactions.

Biles testified that it was common for cocaine to be "stepped on" (*i.e.*, mixed or "cut" with other material to make its volume larger) as it passed from a source to the street. This commonly happened three times before the drugs were sold on the street. Based upon this fact, Biles stated that the street value of the cocaine seized, assuming it had been sold in one-gram amounts, could range from approximately $90,000 to three times that much depending upon how many times it had already been "stepped on." The court noted that recent testimony presented to it by experts had led it to believe that the wholesale price of a kilogram of cocaine ranged from $25,000 to $28,000. Biles responded that his experience was limited to smaller drug sales,

basically $100-per-gram transactions, and his estimate of the street value of the cocaine seized was based upon that experience.

Lisa Martin testified that she has known defendant for 12 to 13 years, and she had been engaged to marry defendant since Christmas of 1987. She testified that defendant was an insurance salesman during the previous year or two. He did not wear extravagant jewelry or clothes. Martin stated that she had never seen defendant with a lot of money at his disposal, but she heard people say he had it, and she would say he did. She testified that just prior to his arrest, defendant had changed into a different person, and she had stopped coming around because she didn't like that person. Martin admitted that she had an idea that he was selling drugs based on rumors and what other people told her. Martin stated that since defendant had been incarcerated she noticed a change in his personality. She described him to "be more loving" and noted that he had taken up religious practices. She admitted that defendant's change of heart could possibly be motivated by the fact that he was facing a prison sentence.

Sarah McCain, defendant's mother, testified that defendant has always lived at home with her and his father. She stated that prior to his arrest he was selling insurance, stocks, and bonds. He would pay the phone bill, rent, and some of the other household expenses. Sarah McCain testified that defendant did not live an extravagant lifestyle, nor did she regard him as having large amounts of money. She admitted her knowledge that defendant had a gun.

Luther Roberts, who was employed by both Caterpillar and as a pastor in Amboy, testified that he had known defendant since about 1969. He stated that defendant and his family previously attended his church. Since March 1991, Roberts had visited defendant in jail 10 to 15 times, and he had talked with him about religious matters on many occasions. Roberts stated that he initially saw a lot of bitterness in defendant's demeanor but after a few visits he saw "a hundred-eighty degree turnaround," and they began reading and studying together. Roberts stated that he believed defendant should be released because he had paid for what he had done. Roberts admitted that he did not know the extent of defendant's drug-dealing activities.

Defendant testified that on the day of his arrest, he had followed an individual named Ron White to the house of another individual known as Bob. Bob was a friend of White's. Defendant brought about 300 grams of cocaine with him that he had received from Martinez. He stated that he had never made such a large purchase in the past, but he usually purchased about three ounces of cocaine at a time every two or three weeks. At the house, White mixed cocaine with a

powder they had obtained from a local health food store. Defendant said this was done to increase the weight of the cocaine. Defendant testified that he was going to sell the cocaine to White and that White had increased the cocaine because his purchaser, an individual named Jack Mann, would buy only in kilogram amounts. Defendant said that he gave White approximately 300 grams of cocaine to be mixed with the powder.

Defendant admitted that he had been selling drugs for about six to nine months. He stated he always sold cocaine by the gram, rather than in larger amounts. Defendant stated that his customers were his friends, and he would charge them $50 a gram. He denied ever selling in kilogram amounts. Defendant denied telling investigators that in the past he had purchased 250 grams of cocaine from Martinez for $1,000. Defendant admitted that he told investigators that Martinez was supposed to get a large shipment from his source, but defendant denied saying that the amount was 100 kilograms. Defendant stated that he arranged the drug transaction which involved White so that he could obtain money. Defendant testified that he was employed on a commission basis selling insurance at the time and made $200 to $300 a week. He admitted abusing alcohol, marijuana, and cocaine on a regular basis and noted that his drug use had gradually increased during the nine months prior to his arrest.

Defendant admitted that he had two handguns with him when he was arrested, one stuffed in his waistband and the other in his pocket. Defendant stated, however, that he did not think that they were loaded. He denied carrying the weapons for protection and denied intending to use them if he had to. Defendant asserted that he used his electronic pager and cellular phone for his insurance customers, and White was the only one who ever paged him or talked with him on the phone about drug transactions.

At the close of the testimony, the trial court noted that defendant's conviction was punishable by a term of imprisonment ranging from 6 to 30 years (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))). The trial court discussed the applicability of various factors in mitigation (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.1 (now 730 ILCS 5/5—5—3.1 (West 1992))) and aggravation (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2 (now codified, as amended, at 730 ILCS 5/5—5—3.2 (West 1992))).

With respect to the mitigating factors, the trial court noted that it could not characterize defendant's conduct as neither causing harm nor threatening serious harm to another "because anybody that possesses drugs with intent to deliver has to know that the drugs could

cause harm to another." The trial court also found that this was not a case where the defendant did not contemplate that his criminal conduct would cause or threaten harm because "the use of drugs could result in certain damage and death if there is an overdose." The trial court credited defendant for his lack of criminal record and stated that, in light of defendant's character and attitude, he was unlikely to commit another crime. The trial court further stated that it was hard to understand how someone with defendant's background could become involved in the type of crime charged, concluding that the only reason for it could have been greed.

With respect to the aggravating factors, the trial court remarked, "The [d]efendant or certainly anybody that sells drugs knows that somebody could be harmed, be overdosed. It certainly is not good for people's health. So, that would be held against you." The court also remarked that defendant was in the process of attempting to receive compensation for selling the cocaine he possessed and "that kind of has to be looked at." The trial court went on to comment that the need to deter others from committing the same crime "is so important in drug cases that we have to put a little asterisk at that. We have to sentence people *** who possess with *** the intent to sell to get more people not to do it. And so that is very much in my mind." The trial court also commented that defendant started out with one amount of cocaine, had that amount doubled, and intended to sell the whole amount of the cocaine. The trial court concluded that a sentence in the six- to eight-year range, as urged by defendant, was entirely inadequate under the circumstances of the case and instead imposed a term of 13 years' imprisonment.

Defendant filed a petition for rehearing, urging that the trial court had placed excessive weight on the amount of cocaine involved and imposed a "severely harsh" sentence and that the sentence did not conform with the spirit of the law, defendant's rehabilitative needs, and the mitigating factors presented in the case. The trial court denied defendant's motion, stating:

"I did look at the amount of drugs that were involved here. Even your original amount of 300 grams is a lot. That makes you more than the average person who I see come through my courtroom here who deals with drugs. *** [M]ost of the people I see come through here, and I write it down, are running about less than an ounce, $900 worth of cocaine. ***

*** I get people with small amounts. And the people with the small amounts, admittedly, I think my record will reflect, get

sentenced somewhere between six and 10, six and eight. And if they have prior criminal involvement *** it goes up higher.

*** I know this wasn't a super X sentencing. But I have to look at the amount of the controlled substance ***.

And it's a lot of *** cocaine. It's a major type, *** big time case."

The trial court added that it had considered the sentencing structure established by the legislature as a guideline of the sentencing range society deems appropriate given the quantity involved. The trial court also commented that it had given weight to the testimony of defendant and his family.

Defendant argues that the trial court improperly considered as aggravating factors that defendant's crime caused harm and that defendant intended to be compensated for the crime. Defendant also contends that the trial court failed to give proper weight to defendant's rehabilitative potential. The State responds that the trial court properly sentenced defendant and any inappropriate factors which it considered were insignificant to that determination. Although defendant failed to raise the issue of consideration of improper aggravating factors during his motion for reconsideration, we note that the question affects defendant's fundamental right to liberty, and we may therefore address the issue which would otherwise have been deemed waived. See *People v. Martin* (1988), 119 Ill. 2d 453, 458.

The imposition of a sentence is a matter of judicial discretion, and the standard of review to determine whether a sentence is excessive is whether a trial court abused that discretion. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297-98; *People v. Rivera* (1991), 212 Ill. App. 3d 519, 525.) This is because the trial judge is normally in a better position than a court of review to consider such factors as credibility, demeanor, general moral character, mentality, social environment, habits and age, and accordingly determine the punishment to be imposed. (*O'Neal*, 125 Ill. 2d at 298; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Therefore, a trial court's sentencing decisions are entitled to great deference and weight. *Perruquet*, 68 Ill. 2d at 154; *People v. Gard* (1992), 236 Ill. App. 3d 1001, 1016.

It is improper for a trial court to rely upon an aggravating factor which is implicit in the crime charged because the legislature is presumed to have provided for such factors when it established the applicable penalty range. See *People v. White* (1986), 114 Ill. 2d 61, 65-66 (improper to consider the general fact that the victim is a child as aggravating a conviction of aggravated battery to a child); *People v. Conover* (1981), 84 Ill. 2d 400, 404-05 (improper to consider the fact

the defendant was compensated by proceeds from the sale of stolen property as aggravating a burglary or theft conviction).

It is possible to commit the crime of delivering a controlled substance without any form of compensation. It has been recognized, however, that few drug deliveries are made as gifts, and compensation is an implicit factor in most drug transactions; therefore, it is generally improper to consider compensation to be a factor in aggravation. (See *People v. Smith* (1990), 198 Ill. App. 3d 695, 698-99; *People v. Harrison* (1987), 156 Ill. App. 3d 39, 42; *People v. Berry* (1984), 122 Ill. App. 3d 1035, 1036-37; see also *Conover*, 84 Ill. 2d at 405 (compensation in the form of robbery proceeds was implicit in the crime of robbery and therefore improperly considered as a factor in aggravation).) We find this same principle to be applicable in cases involving the possession of a controlled substance with intent to deliver. Thus, the mere fact that compensation is expected by one who possesses a controlled substance with intent to deliver should not be considered as an aggravating factor. We note, however, that the *amount* of profit a defendant derives from a criminal enterprise, and the actions taken to maximize that amount, reflect on the nature of the crime. The amount of profit can relate to a number of proper sentencing considerations such as the extent and nature of a defendant's involvement in the particular criminal enterprise, a defendant's underlying motivation for committing crime, the likelihood that a defendant will commit similar offenses in the future, and the need to deter others from committing similar crimes.

Here, the trial court observed that the defendant was attempting to receive compensation for his actions, and it commented that that "kind of has to be looked at." The trial court concluded that greed had caused defendant to become involved in drug dealing. Also, while commenting on the amount of drugs involved, the trial court noted that defendant had willingly participated in multiplying the quantity of the substance and had intended to sell the whole of this increased amount. The court's comments at sentencing and in response to defendant's motion for reconsideration, read as a whole, focused on defendant's role in trafficking cocaine, the sheer amount of cocaine involved, the fact that the defendant's acts were motivated by greed, and the need to deter others from committing similar crimes in the future. We conclude that the court did not purport to increase defendant's sentence because of the mere fact that he intended to receive payment for delivering the drugs.

It is well recognized that drugs and drug-related crimes cause great harm to our society. The extent of this harm is demonstrated in

the criminal justice system on a daily basis. In that regard, some courts have noted that it is improper to consider this general societal harm as an aggravating factor in a drug case. (See *People v. Atwood* (1990), 193 Ill. App. 3d 580, 592; *People v. Maxwell* (1988), 167 Ill. App. 3d 849, 852. But see *People v. Hoskins* (1992), 237 Ill. App. 3d 897, 900.) If a trial court intends to consider the societal harm defendant's conduct threatened to cause as an aggravating factor, the record must demonstrate that the conduct of the defendant had a greater propensity to cause harm than that which is merely inherent in the offense itself. (See *Atwood*, 193 Ill. App. 3d at 592-93.) For example, defendant armed himself with two handguns when he chose to commit the underlying crime in this case. If the trial court had found that he intended to use those weapons to implement his criminal intentions, or if he had committed an act of violence in the course of the underlying crime, then that fact could be considered as an aggravating circumstance.

It is not improper *per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking. It is important that defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences. The harm that the crime causes society is an inherent consideration which underlies the basic range of penalties specified by the legislature. Commenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse. We do not wish to discourage courts from addressing such relevant considerations, but we suggest that sentencing courts attempt to segregate such general commentary from the balancing of sentencing factors.

■ The following factors in mitigation are provided by statute: (1) the defendant's criminal conduct neither caused nor threatened serious physical harm to another; and (2) the defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.1(1), (2) (now 730 ILCS 5/5—5—3.1(1), (2) (West 1992)).) It is our opinion that the trial court correctly determined that the harm inherently caused by drug-related crimes rendered both of these mitigating factors inapplicable.

■ The court might have also found inapplicable the first factor in aggravation provided under section 5—5—3.2 (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(1) (now codified, as amended, at 730 ILCS 5/5—5—3.2(1) (West 1992))), *i.e.*, that defendant's conduct caused or threatened serious harm, because the general harm caused by the dis-

tribution of drugs was incorporated by the legislature when it provided the applicable sentencing range. However, because defendant entered a guilty plea to a charge of possessing substantially less cocaine than was actually involved in this case and agreed to allow the actual amount to be argued as a factor in aggravation, the court could properly conclude that the minimum mandatory sentence set by the legislature did not adequately address the additional threat of harm defendant's crime posed to society in this particular case. We conclude, therefore, that under the particular circumstances of this plea agreement there was no error in the trial court's weighing any special harm threatened by the larger quantity of drugs shown by the evidence.

■■ Where a trial court has considered an improper aggravating factor in sentencing, and a reviewing court is unable to determine the weight given to an improper factor, the cause must be remanded for resentencing. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332.) However, if it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remand is not required. (*Bourke*, 96 Ill. 2d at 332.) Because, here, the record reflects that neither disputed factor was significant to the trial court's ultimate sentencing decision, even if we were to hold that the trial court improperly considered the matters of compensation and threat of harm, we would not be required to remand for resentencing. Specifically, it is evident from the arguments and comments during defendant's motion for reconsideration that the court imposed the particular sentence in large part because of the extremely significant amount of cocaine involved in this case. It is also noted that neither compensation nor threat of harm was mentioned by the court during that hearing when it explained the reasoning behind its sentencing decision. If any error occurred in the judge's consideration of the factors mentioned, we regard it as harmless. See *Hoskins*, 237 Ill. App. 3d at 900-01.

■■ Defendant also complains that the trial court did not consider his rehabilitative potential. Where the defendant has presented mitigating evidence in the sentencing hearing, the reviewing court will presume that the sentencing court considered it, absent some indication to the contrary. (*People v. Phillips* (1992), 226 Ill. App. 3d 878, 891; *People v. Powell* (1987), 159 Ill. App. 3d 1005, 1011.) Furthermore, where, as here, the sentencing court examines the presentence report, it is presumed that the court took into account the defendant's potential for rehabilitation. (*Gard*, 236 Ill. App. 3d at 1017; *Powell*, 159 Ill. App. 3d at 1011.) The only point advanced by defendant in

support of this argument is a bare assertion that the trial court made no statement that it considered rehabilitative potential during sentencing or when ruling on defendant's motion for reconsideration. A sentencing court is not obligated to recite and assign value to each factor it is relying upon (*Gard*, 236 Ill. App. 3d at 1016-17; *Powell*, 159 Ill. App. 3d at 1011), and a trial court need not place greater weight on a defendant's rehabilitative potential than on the seriousness of the offense and the need to protect the public (*People v. McDonald* (1992), 227 Ill. App. 3d 92, 100). In any event, defendant's assertion is unsupported by the record. The trial court specifically found it unlikely that defendant would commit a crime in the future. The court, however, emphasized the importance of deterring others from committing similar crimes and the large amount of cocaine involved in this offense and then imposed the sentence it deemed to be appropriate given all those considerations. We decline to presume that the court did not consider defendant's potential for rehabilitation.

Accordingly, we conclude that the sentence imposed in this cause was not an abuse of the trial court's discretion.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.