NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170777-U

NO. 4-17-0777

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ZETH OLIVER, Defendant-Appellant. | ) Appeal from the ) Circuit Court of ) Coles County ) No. 15CF17 ) ) Honorable ) Teresa K. Righter, ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court did not improperly consider a factor inherent in the offense as a factor in aggravation when fashioning defendant's sentence.

(2) Defendant's 14-year sentence for unlawful possession of methamphetamine with intent to deliver 15 or more grams but less than 100 grams of methamphetamine is not excessive.

¶ 2    In December 2016, defendant, Zeth Oliver, pleaded guilty to unlawful possession of methamphetamine between 15 and 100 grams with intent to deliver, a Class X felony. The trial court sentenced him to 14 years in prison. Defendant files this direct appeal, claiming his sentence included a double enhancement and was excessive. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    On December 15, 2016, the trial court conducted a combined status hearing. Defendant, at the time, had four felony cases pending against him for charges including burglary,

armed robbery, and aggravated kidnapping. In the case at issue in this appeal (Coles County case No. 15-CF-17), defendant had been charged with methamphetamine trafficking (720 ILCS 646/56 (West 2014)) (count I) and unlawful possession with intent to deliver more than 15 grams but less than 100 grams of methamphetamine (720 ILCS 646/55(a)(2)(C) (West 2014)) (count II), both Class X felonies. At the combined hearing, defendant's counsel informed the court he believed they had "a partial negotiated disposition," with "some charges dismissed, some charges lowered."

¶ 5        Defendant pleaded guilty to count II (unlawful possession of between 15 and 100 grams of methamphetamine with intent to deliver) in exchange for the State's agreement to dismiss count I (methamphetamine trafficking). The trial court admonished defendant that this Class X felony carried a possible penalty of 6 to 30 years in prison. The court continued with proper admonishments.

¶ 6        The State then presented the following factual basis. Inspector Scott Standerfer with the East Central Illinois Drug Task Force, if called as a witness, would testify that on December 28, 2014, he received a telephone call from defendant's probation officer, who informed him that defendant had been searched. The probation officer found approximately 20 grams of suspected methamphetamine in defendant's pants pocket. The substance was sent to the lab and tested positive. According to the State, defendant admitted he had been actively distributing methamphetamine in Coles County. Defendant agreed to the factual basis as presented. The trial court accepted defendant's guilty plea as knowing and voluntary.

¶ 7        On June 22, 2017, the trial court conducted a combined sentencing hearing. Various witnesses testified as to the facts and circumstances of the offenses to which defendant had pleaded guilty. Standerfer testified he  first became familiar with defendant in 2013 when defendant's name would "come up from different people" with regard to narcotics investigations and "distribution."

On December 28, 2014, he responded to defendant's residence upon a request by probation. He took control of the drug investigation and took possession of the crystal methamphetamine, the total initial weight of which was 22 grams. Standerfer opined this amount was significantly more than a daily amount for the typical individual. Defendant admittedly purchased this amount from an individual in Indiana with the intent of selling it in Coles County.

¶ 8        Defendant's father, Martin Ray Oliver, testified he had "done drugs and alcohol all [his] life." He raised defendant the "only way [he] knew how." He started "getting [defendant] high at the age of eight, and it's just been progressing ever since then." He was considered the better parent over defendant's mother. Oliver admitted he was not a good role model for defendant, but he has been clean for several years. He said he would help defendant overcome his drug problem and would not be afraid to report a relapse to defendant's probation officer.

¶ 9        Gary Stephen, a local minister, testified he and other ministers have created a program—Coles County Mentoring Project—to assist jail inmates with ministry and other programs in the hope of decreasing recidivism. Defendant attended the weekly one-on-one ministry program.

¶ 10        Parker Alfred Booth, the minister who met with defendant, testified he met defendant approximately one year ago. In the past year, defendant's personality and attitude have improved. He had also improved spiritually. As Booth described it, defendant had been transformed. He said he saw "great potential" in defendant.

¶ 11        Defendant made a statement in allocution describing his childhood as one consisting of "drugs and alcohol and violence" and lacking a positive role model. He understood that he must now take the necessary steps to change. He apologized to "everyone affected by [his]

actions." He hoped to end the cycle of generational addiction and be the kind of father his three children deserved. He said he feared prison would "hurt [his] progress more than help [him]."

¶ 12         After considering the evidence in aggravation and mitigation and hearing the arguments and defendant's statement in allocution, the trial court noted the positive impact the Coles County rehabilitative programs, ministries, and drug court could have on individual lives. The court stated it believed "in a person's ability to change and turn their life around." The court also noted the importance of a person's childhood in terms of how it affected one's adult behavior. The court stated it also believed "children learn what they live." Considering these two principles, the court also noted it was required to consider the "deterrence aspect" in the felony court system. The court stated:

> "Clearly any number of these charges to which [defendant] has pled guilty had the potential of causing significant harm and could have turned out much worse than they did. The possession of methamphetamine with intent to deliver obviously has a possible impact of addicting additional people and all of the crime that can result from people being drug addicts which can occur then in the country. A residential burglary you always run the risk of there being a person inside the home *** so these are very serious crimes which as they happened had significant impact and injury to the individuals involved but also had a significant potential of being much worse than they ended up being, so the court does take all of these offenses very seriously."

After "having taken into consideration the arguments by counsel and everything else that [it] just talked about," the trial court sentenced defendant to 14 years in prison.

¶ 13　　　　On July 21, 2017, defendant filed a motion to reconsider the sentence. In a hearing on October 19, 2017, defendant's counsel premised his sentencing challenge on the trial court's mention of two factors when sentencing defendant: (1) defendant's conduct posed serious physical harm to others and (2) the need to deter others. Defendant argued the legislature had already considered the harm to others when it elevated a possession offense to a higher felony with the addition of the element of "intent to deliver." The effect on others was already considered inherently in the offense and was improperly considered by the trial court at sentencing as a factor in aggravation. The court denied defendant's motion to reconsider the sentence.

¶ 14　　　　This appeal followed.

¶ 15　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　　　　　　　A. Double Enhancement of Sentence

¶ 17　　　　Defendant argues the trial court erred in considering the potential harm to others as a factor in aggravation when that harm to others was inherent in the more serious felony charge of the intent-to-deliver offense, rather than a simple-possession offense. Defendant claims this constituted an improper double enhancement.

　　　　　　"Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. [Citation.] Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' [Citation.] Such dual use of a single factor is often referred to as a 'double enhancement.' [Citation.] The prohibition against double enhancements is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the

- 5 -

factors inherent in the offense. [Citation.] The double-enhancement rule is one of statutory construction ([citation]), and the standard of review therefore is *de novo* ([citation]).” *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004) (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-85 (1992)).

¶ 18 Applying these principles, we note the following. Defendant was in possession of approximately 20 grams of methamphetamine. If charged with simple possession, defendant would be sentenced as a Class 1 offender. See 720 ILCS 646/60(b)(3) (West 2014) (a person in possession of 15 or more grams but less than 100 grams of methamphetamine is guilty of a Class 1 felony). However, the State charged defendant under the enhanced felony of methamphetamine delivery, alleging he possessed the 20 grams with intent to deliver, subjecting him to sentencing as a Class X offender. See 720 ILCS 646/55(a)(2)(C) (West 2014) (a person in possession with intent to deliver 15 or more grams but less than 100 grams of methamphetamine is guilty of a Class X felony). Because the State used the element of “intent to deliver” to enhance the felony, it would be error for the trial court to rely on it as a basis for an enhanced penalty.

¶ 19 We begin with the strong presumption the trial court based its sentencing judgment on proper legal reasoning. *People v. Winchester*, 2014 IL App (4th) 140781, ¶ 72. However, where a trial court relies upon an improper factor in sentencing and a court of review cannot ascertain from the record whether the consideration of that factor affected the sentence, the cause must be remanded for resentencing. *People v. Bourke*, 96 Ill. 2d 327, 332 (1983).

¶ 20 Mention or consideration of a factor inherent in the offense during sentencing is, however, not necessarily reversible error. *People v. O'Toole*, 226 Ill. App 3d 974, 992 (1992) (The court “need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist.”). The reviewing court must determine (1) whether the inherent factor has varying

degrees, (2) whether the trial court merely mentioned or actually considered the factor, and (3) whether the factor served as a primary factor. *Id.*

¶ 21    The Second District eloquently explained the issue as follows:

"It is not improper *per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking. It is important that defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences. The harm that the crime causes society is an inherent consideration which underlies the basic range of penalties specified by the legislature. Commenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse. We do not wish to discourage courts from addressing such relevant considerations, but we suggest that sentencing courts attempt to segregate such general commentary from the balancing of sentencing factors." *People v. McCain*, 248 Ill. App. 3d 844, 852 (1993).

¶ 22    Defendant bears the burden of affirmatively establishing that the trial court relied upon improper considerations. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). In determining the rationale behind the trial court's sentencing decision, we must interpret the record as a whole, rather than focus on isolated comments. *Id.*

¶ 23    Here, when pronouncing the sentence, the trial court stated it had considered defendant's presentence investigation report, the testimony presented, defendant's statement in allocution, arguments of counsel, and the statutory factors in aggravation and mitigation. The court mentioned that the inmate-ministry program in Coles County, as testified to by Booth and Stephens, had "a good potential to make a significant impact" on inmates, seemingly implying that

defendant's involvement improved his potential for rehabilitation. And, relying on its experience with family law, the court also mentioned its "consistent catchphrase[ ]" that "children learn what they live," seemingly implying that defendant was exposed to addiction and an abusive home at an early age. However, the court also mentioned the importance of "the deterrence aspect" of sentencing. The court noted "these things," such as an unhealthy childhood,

"can be an explanation as to what happened, but it's not an excuse. It doesn't eliminate the need for a penalty or a punishment to be put in place under our rules of—of society and civility and all of those things. Clearly any number of these charges to which [defendant] has pled guilty had the potential of causing significant harm and could have turned out much worse than they did. The possession of methamphetamine with intent to deliver obviously has a possible impact of addicting additional people and all of the crime that can result from people being drug addicts which can occur then in the county. A residential burglary you always run the risk of there being a person inside the home when you go in, and oftentimes there are very tragic situations that occur as a result. *** [S]o these are very serious crimes which as they happened had significant impact and injury to individuals involved but also had a significant potential of being much worse than they ended up being, so the [c]ourt does take all of these offenses very seriously."

¶ 24    When considering the context of the trial court's comments as a whole, it is not clear that the trial court improperly considered harm to society as an aggravating factor. Rather, the court's comments about harm appear to be more of a reiteration of the severity of the offense and less of a consideration of an aggravating factor. In fact, the comments appear to be consistent with the instances discussed in *McCain*. "Commenting on the problems caused by drug-related

crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse." *McCain*, 248 Ill. App. 3d at 852.

¶ 25 Accordingly, we conclude the trial court did not commit error by mentioning the harm inflicted on society. The court made these comments in the context of discussing the severity of the offense, noting that other individuals are necessarily or potentially involved due to the very nature of the offense. Thus, we conclude the court did not indicate the harm to others was an aggravating factor.

¶ 26 B. The Sentence

¶ 27 Defendant argues the 14-year prison sentence was too severe and fails to reflect certain applicable factors in mitigation. In particular, defendant claims the court failed to consider (1) his childhood experiences with abuse and addiction, (2) his progress toward rehabilitation with the inmate ministry program as testified to by Booth and Stephens, and (3) his need for treatment of his drug addiction.

¶ 28 It is well known that a trial court has wide latitude in both determining and weighing factors in mitigation and aggravation when exercising its discretion and imposing a sentence. A reviewing court gives the trial court's ruling great weight and deference. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 23. If the imposed sentence falls within the statutory sentencing range, as in this case, this court will not disturb the sentence unless its imposition constitutes an abuse of discretion. *Id.*

¶ 29 Defendant was convicted of the Class X felony of unlawful possession of between 15 and 100 grams of methamphetamine with intent to deliver (720 ILCS 646/55(a)(2)(C) (West 2014)). The Class X range was imprisonment for no less than 6 years and no more than 30 years.

*Id.* The trial court sentenced defendant to 14 years' imprisonment—16 years less than the maximum.

¶ 30      We find no abuse of discretion given (1) defendant's sentence falls in the middle of the potential range, (2) his criminal history (he was also being sentenced on three other felony cases), and (3) the court's apparent consideration of all relevant factors and circumstances. The court stated it would "make that recommendation with regards to the 2015 cases that [defendant] be recommended for drug and alcohol treatment while in the Department of Corrections." The court carefully considered defendant's history, conduct, addiction, and nature of the offense in fashioning, what this court considers to be, a reasonable sentence. We find no abuse of discretion.

¶ 31                          III. CONCLUSION

¶ 32      For the foregoing reasons, we affirm the trial court's judgment.

¶ 33      Affirmed.