2023 IL App (2d) 220132-U
No. 2-22-0132
Order filed March 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-1340 |
| | ) | |
| KHAMSAUME XAYVONG, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's 25-year sentence for aggravated criminal sexual assault was not excessive given defendant's criminal history and the gravity of the offense, which involved an unprovoked sexual attack on the elderly victim, with whom defendant had developed a familial and trusting relationship over the decades.

¶ 2    Following a bench trial, defendant, Khamsaume Xayvong, was convicted of aggravated criminal sexual assault of a victim 60 years of age or older (720 ILCS 5/11-1.30(a)(5) (West 2018)), battery (*id.* § 12-3(a)), and unlawful restraint (*id.* § 10-3(a)). The victim, G.L., was 71 years old when the offenses occurred. The aggravated-criminal-sexual-assault conviction merged with the battery conviction for purposes of sentencing. Defendant was sentenced to 25 years for

aggravated criminal sexual assault and a consecutive term of 3 years for unlawful restraint. In this timely filed appeal, defendant argues that error arose when he was sentenced to 25 years' imprisonment for aggravated criminal sexual assault. We disagree. Thus, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was born in Laos in 1962. He was homeless for many years and fled to Thailand when he was 18. He lived in a refugee camp in Thailand for 10 months before he received asylum in the United States. In the early 1980s, defendant met G.L. and her family, who live in Aurora. G.L., whose best friend is defendant's sister, treated defendant like her son. Defendant reciprocated. He referred to G.L. as his mother and frequently visited G.L. and her family.

¶ 5      Defendant lived a law-abiding life for the next 10 years. In 1993, defendant was convicted of unlawful possession of a weapon and given probation. In 1996, defendant "used a machete to chop somebody up *** that he didn't want *** to live anymore." He was convicted of attempted murder and sentenced to 15 years' imprisonment. After serving 10 years, defendant was released. From 2005 to 2018, defendant lived intermittently in a homeless shelter in Aurora. In 2012, defendant was convicted of theft and sentenced to 38 days in jail. In 2015, he was convicted of battery and sentenced to conditional discharge.

¶ 6      In the summer of 2018, defendant moved in with G.L. and lived in her basement with two other people. Defendant was employed, helped pay for food and utilities, and did various household chores.

¶ 7      Defendant and G.L. lived together peacefully until July 6, 2019. At around 3:30 p.m. that day, defendant came home from work. He was carrying two cans of beer and asked G.L. if she wanted to drink with him. She declined. G.L. offered defendant something to eat, he accepted, and the two ate separately in the same room. When defendant finished eating, G.L. asked him to go to

the basement. He refused, and G.L. became upset. When G.L. walked away, defendant grabbed her from behind, pushed her against a table abutting an open window, and shoved his hands inside her underwear. Defendant penetrated G.L.'s vagina with all his fingers. G.L. screamed for help. G.L.'s neighbor heard her and came to her rescue. Defendant fled. G.L. sustained lacerations to her vagina, external bruising and abrasions, and psychological trauma.

¶ 8 After trial, defense counsel filed a posttrial motion. Before the trial court ruled on that motion, a presentence investigation report (PSI) was prepared. Defendant sent the PSI investigator around 32 pieces of scrap paper that the PSI investigator tried to decipher. These notes concerned the PSI investigator, so she alerted defense counsel.

¶ 9 Defense counsel moved to continue the sentencing hearing so that the Kane County Diagnostic Center could evaluate defendant. In making that request, counsel said, "Judge, I clearly state that I am not raising a *bona fide* doubt for the purpose of the trial." Counsel was "not terming it as fitness so much as a full psychological evaluation[.]" She explained that if defendant's fitness was an issue, the evaluation would bear that out. She also noted that the evaluation would be relevant for "mitigation." The trial court agreed to continue the sentencing hearing so that defendant could undergo the evaluation. The court noted that defendant appeared to have difficulty understanding what he heard in court. The court remarked that it had attributed defendant's difficulty to a language barrier rather than a fitness issue, yet defendant had repeatedly denied the court's offers of a courtroom translator.

¶ 10 On the next court date, the trial court noted that it "did receive a copy of [the] evaluation, and *** read it." Defense counsel responded that she, too, "read [the evaluation], and [she was] satisfied that at least the issues [she] was concerned about are not present, as far as the [evaluator] can tell." Counsel noted that the "evaluator didn't make a finding of any mental[-]health problems

but then [he] recommend[ed] substance abuse and MRT [Moral Recognition Therapy] as possible remedies for something he was unable to diagnose."

¶ 11 Evidence presented at sentencing revealed that, every week for the past two years, G.L. was receiving treatment from a clinical mental health counselor. G.L. saw the counselor in her home, as she was afraid to leave her home without someone escorting her. G.L. was very religious and had lived an active social life before the assault, but since then she left her home only to attend church services. She also entertained very few visitors in her home. She slept poorly and had nightmares about the attack. She believed defendant would have killed her during the attack if her neighbor had not intervened, and she feared that defendant would kill her if he was released. According to G.L., defendant's sister warned her that defendant would kill G.L. if he had the chance. G.L. pleaded for the trial court to "put [defendant] away and never let him out[ ]" or at least give defendant the "strictest sentence possible." During closing argument at the sentencing hearing, the State went through the factors in aggravation and asked the court to impose a 20-year sentence. Defense counsel addressed mitigating factors not delineated in section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2020)). For example, counsel asserted that defendant endured much trauma throughout his life and that he loved G.L.

¶ 12 In sentencing defendant to 25 years for aggravated criminal sexual assault, the trial court noted that it considered the evidence presented at trial, which it "remember[ed] *** very clearly." The court found defendant's acts "outrageous, unprovoked in any way, unsolicited in any way." The court also stated that it considered, among other things, the PSI, "the financial impact of incarceration[,]" and "the evidence and information offered by both sides in aggravation and mitigation[.]" The court noted that, because defendant did not make a statement in court, it had to look to the PSI for expressions of remorse. The court commented that defendant's remarks in the

PSI showed that he felt sorry for himself, not G.L. Specifically, defendant complained that he was missing work because of this case, and felt falsely accused by G.L., whom defendant described as " 'crazy' " and " 'mentally ill.' " Concerning the factors in mitigation and aggravation, the court observed,

> "Counsel for the defense discusses repeatedly mental[-]health issues. He was evaluated, and he was found to be fit. I am not considering mental[-]health issues."

The court never articulated what, if any, rehabilitative potential defendant had. The court also never ruled on defendant's posttrial motion.

¶ 13 Defendant appealed, and defense counsel moved for a summary remand because defendant's posttrial motion remained pending in the trial court. We granted that motion and remanded the case. Thereafter, the trial court denied defendant's posttrial motion, and defendant filed a timely amended notice of appeal.

¶ 14                                II. ANALYSIS

¶ 15 Defendant argues on appeal that error arose when he was sentenced to 25 years' imprisonment for aggravated criminal sexual assault. Defendant acknowledges that he forfeited review of this issue by failing to raise it below in a motion to reconsider his sentence. *People v. Johnson*, 2021 IL App (2d) 180775, ¶ 12. Nevertheless, he contends that we may consider the issue (1) under the plain-error rule or (2) because defense counsel was ineffective for failing to raise the issue in the trial court.

¶ 16 " 'Plain error is a limited and narrow exception to the general forfeiture rule.' " *Id.* ¶ 14 (quoting *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 17). " 'To obtain relief under the plain-error rule, a defendant must show that a clear or obvious error occurred.' " *Id.* (quoting *Walsh*, 2016 IL App (2d) 140357, ¶ 17). " 'If a clear or obvious error is identified, a defendant may obtain

relief if the error complained of meets either prong of the two-pronged plain-error rule.' " *Id.* (quoting *Walsh*, 2016 IL App (2d) 140357, ¶ 17). "In the sentencing context, a defendant must *** show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 17    "A claim of ineffective assistance of counsel requires a defendant to establish [(1)] that his attorney's performance fell below an objective standard of reasonableness and [(2)] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Miller*, 2014 IL App (2d) 120873, ¶ 18. "Counsel will not be deemed ineffective for failing to raise a meritless issue." *Id.*

¶ 18    "[U]nder either theory"—*i.e.*, plain error or ineffective assistance of counsel—" we first consider whether [the] defendant's proposed issue has merit." *Id.* ¶ 19. If the issue counsel failed to raise lacks merit, there can be neither plain error nor a basis for an ineffectiveness claim. *Id.* (citing *People v. Cosby*, 231 Ill. 2d 262, 273 (2008) (in plain-error review, "[a]bsent reversible error, there can be no plain error")); see also *People v. Coleman*, 158 Ill. 2d 319, 349 (1994) (where no error occurred, there can be no prejudice and counsel cannot be ineffective for failing to raise the issue).

¶ 19    With these principles in mind, we turn to whether error arose when defendant was sentenced to 25 years' imprisonment for aggravated criminal sexual assault. "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). Thus, we will not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse

of discretion only if it is at great variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might weigh the pertinent factors differently. *Id.* at 209.

¶ 20     In determining an appropriate sentence, relevant considerations include (1) the nature of the crime, (2) protection of the public, (3) deterrence, (4) punishment, and (5) the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the circumstances of the case. *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Moreover, the trial court need not recite all aggravating and mitigating factors before imposing a sentence. *People v. Spicer*, 379 Ill. App. 3d 441, 469 (2007). Rather, we presume that the trial court considered all relevant mitigating factors in determining a sentence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). We will not consider this presumption overcome without explicit evidence from the record that the trial court did not consider those factors. *Id.*

¶ 21     Here, there is no dispute that defendant faced a sentence between 6 and 30 years for aggravated criminal sexual assault, which is a Class X felony. 720 ILCS 5/11-1.30(a)(5), (d)(1) (West 2020); 730 ILCS 5/5-4.5-25(a) (West 2020). Because defendant's 25-year sentence fell within this range, we must presume it is presumptively proper. See *People v. Branch*, 2018 IL App (1st) 150026, ¶ 35.

¶ 22     Nevertheless, defendant argues that the sentence is improper because it "fails to reflect consideration of [defendant's] mental illness, his rehabilitative potential, or an appropriate balancing of rehabilitation and retribution." Defendant claims that, when the trial court asserted that it was " 'not considering mental[-]health issues' " because defendant " 'was evaluated and

\*\*\* found fit,' " the court "plainly erred" because it "equated a finding of fitness to a lack of mental[-]health issues." Moreover, defendant contends that the court failed to consider that, given his age (59), the length of his sentence, and the grueling life of a prisoner, he may likely die in prison—after the State expends large sums on his incarceration. We reject defendant's arguments for several reasons.

¶ 23    First, the record clearly reveals that defense counsel requested a mental-health evaluation because of issues about defendant's mental health, not merely his fitness to participate in the proceedings. Although counsel noted that the evaluation would disclose any fitness issues, counsel also believed that the evaluation would be useful in preparing mitigating evidence for sentencing. The trial court reviewed the completed evaluation and indicated that defendant did not have any *diagnosed* mental-health issues, a fact to which defense counsel, too, conceded. Given all that transpired, we believe that, when the court noted that the evaluator found defendant "fit," the court was referring to defendant's mental health, and not just to his fitness to participate in the proceedings. Thus, because the record does not disclose that defendant suffered from any diagnosed mental illness, we can find no error in the trial court's statement that it would "not consider[ ] mental[-]health issues" in sentencing defendant.

¶ 24    Second, nothing in the record indicates that the trial court failed to consider the mitigating evidence presented. Indeed, the court expressly noted that it considered the cost to imprison defendant, the mitigating factors, and the evidence presented in the PSI. Although the court did not specifically mention defendant's rehabilitative potential or age, the record does not overcome the presumption that the court considered those factors. See *People v. McCain*, 248 Ill. App. 3d 844, 853 (1993) ("[W]here \*\*\* the sentencing court examines the [PSI], it is presumed that the court took into account the defendant's potential for rehabilitation.").

¶ 25    Moreover, we cannot conclude that the sentence was improper given, most notably, the seriousness of the crime. The crime was, as the trial court found, "outrageous." Defendant exploited a position of trust when he sexually violated G.L., an elderly woman who welcomed defendant into her home and treated him like family. Not only did G.L.'s previously vibrant social life drastically change after the attack, but she now lives in a constant state of fear. G.L. locks her bedroom door at night and ventures outside her home only occasionally and if escorted. She is forever afraid that defendant would kill her if he is released—and her fear is doubtless legitimate, as defendant's own sister warned her of that danger, to say nothing of his significant, violent criminal history. Yet, despite the gravity of the offense and defendant's prior attempted murder, the court sentenced defendant to 5 years less than the maximum term.

¶ 26    Given the above, we cannot conclude that the trial court abused its discretion in sentencing defendant to 25 years' imprisonment for aggravated criminal sexual assault. And, because there is no error, there can be no plain error. *Cosby*, 231 Ill. 2d at 273. Likewise, we cannot deem defense counsel ineffective for failing to raise a meritless sentencing claim. *Coleman*, 158 Ill. 2d at 349.

¶ 27                                  III. CONCLUSION

¶ 28    Having found no error in defendant's sentence, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.