NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240601-U

NO. 4-24-0601

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| BRYAN BAYSINGAR, | ) | No. 23CF169 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1       *Held*: The appellate court affirmed the 45-year prison sentence for defendant, who was
convicted of predatory criminal sexual assault of a 5-year-old child.

¶ 2       Defendant, Bryan Baysingar, pled guilty to predatory criminal sexual assault of a child

(720 ILCS 5/11-1.40(a)(1) (West 2022)). The trial court sentenced defendant to 45 years in prison.

Defendant filed a motion to reconsider his sentence, which the court denied. Defendant appeals,

arguing that his sentence is excessive. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                               A. Charges and Guilty Plea

¶ 5       On July 18, 2023, defendant, a 57-year-old, was charged with two counts of predatory

criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022)) and two counts of

aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2022)). On August 3, 2023,

1

defendant was indicted on the same charges.

¶ 6 On September 13, 2023, defendant entered an open guilty plea to one count of predatory criminal sexual assault. At the hearing on that date, the trial court advised defendant that he would be sentenced to 6 to 60 years in prison following a sentencing hearing.

¶ 7 The factual basis for the plea was as follows. L.A. was a five-year-old girl who lived next door to defendant. On July 17, 2023, L.A.'s mother was inside her home visiting with a friend while L.A. played in her yard with defendant. L.A.'s mother heard L.A. scream, so she looked out the window and saw L.A. running away from defendant's house. L.A. was bleeding from her vaginal area. L.A. repeatedly said defendant "did this to her." A doctor examined L.A. and found tearing in her vaginal area consistent with an object, finger or penis being forced into her vagina. When officers went to defendant's residence, defendant said "[he] fucked up, take [him] to jail." Inside defendant's house, officers found blood on a bed and in a bathroom.

¶ 8 B. Sentencing

¶ 9 The trial court held a sentencing hearing on November 9, 2023. The court admitted the presentence investigation report (PSI).

¶ 10 According to his PSI, defendant's criminal history included convictions for theft and battery in 1983, battery in 1984, burglary in 1988, driving under the influence of alcohol (DUI) and disorderly conduct in 1991, burglary in 1992, resisting arrest and DUI in 1994, and domestic battery in 2017. The PSI stated that defendant was unemployed and received disability payments from the Social Security Administration. Defendant reported drinking a "12 pack" of alcohol and using marijuana daily. Defendant said he was under the influence of drugs and alcohol at the time of the incident. Defendant said he graduated from high school but that he has handicaps or disabilities. He reported that he "can't read."

¶ 11 The State called two witnesses to testify. Claudia Plumer, a pediatric nurse

2

practitioner, testified that she treated L.A. on and after July 17, 2023. Plumer said that on July 17, 2023, L.A. had "extensive injuries" that required surgery. L.A.'s injuries included lacerations in and around her vagina, around her anus and inside her vaginal canal. Plumer testified that L.A.'s injuries were "consistent with penetrative trauma." Internal and external sutures were required to repair L.A.'s injuries.

¶ 12    Ian Cummings, a detective with the Metamora Police Department, testified that he helped execute a search warrant on defendant's residence on July 17, 2023. Defendant was in the home during the search. Cummings found "large amounts of suspected blood in the bathroom upstairs." In a bedroom, Cummings found "a large amount of blood" on a bed and a child's bikini bottoms on the floor. During the search, Cummings heard defendant say: "I fucked up. Take me to jail. Take me to jail. I know what I did." Cummings saw L.A. briefly at the scene and described her as "extremely emotional, crying, screaming. Obviously in a large amount of pain."

¶ 13    L.A.'s mother provided a written victim impact statement to the trial court. Defendant provided a statement in allocution, acknowledging that what he did was wrong and expressing remorse. Defendant asked the court for mercy, saying: "I really don't want to die in prison."

¶ 14    The State noted that defendant had "a fairly lengthy criminal history," including convictions for theft, battery, burglary, DUI, and domestic battery. The State discussed the severity of the incident and stated that "the defendant caused serious physical harm here in this crime." The State also noted "the potential for long-lasting emotional and other repercussions form this act by the defendant." The State asked the trial court to sentence defendant to 50 years in prison.

¶ 15    Defense counsel argued that most of defendant's criminal history was old, dating back to the 1990s, with the exception of a 2017 domestic battery conviction. Defense counsel asked the trial court to sentence defendant to 10 years in prison based on his age, history, and admission of guilt.

¶ 16    The trial court stated that it considered (1) that defendant pled guilty, (2) the factual

basis for the plea, (3) the PSI, (4) the aggravating and mitigating evidence offered by the parties, (5) defendant's statement in allocution, (6) the victim impact statement, and (7) arguments from counsel as to sentencing. The court found no factors in mitigation. In aggravation, the court found that (1) defendant caused and threatened serious harm, (2) defendant had a history of criminal activity, and (3) a substantial prison sentence was necessary to deter others.

¶ 17       The trial court said it gave "serious weight" to the fact that defendant pled guilty and saved L.A. from further trauma. The court also acknowledged that defendant admitted his wrongdoing very early in the investigation. However, the court described defendant's crime as "horrible" and defendant's actions as "exceptionally violent." The court explained that although some of defendant's criminal history was "very old," this case was defendant's fourth felony offense, which meant defendant had repeatedly deviated "from the expectations that society has for its citizens." The court noted its responsibility to "protect society" and sentenced defendant to 45 years in prison.

¶ 18                          C. Motion to Reconsider Sentence

¶ 19       Defendant filed a motion to reconsider his sentence. At the hearing, defendant argued that his sentence was excessive because (1) he pled guilty, (2) he saved L.A. from "the additional trauma of testifying in court," and (3) most of his criminal history was "old." Defendant asked the trial court to reduce his sentence because "he does not want to die in prison." The State responded that defendant's sentence was appropriate given the severity of his crime.

¶ 20       The trial court agreed that defendant's criminal history "is of a vintage era." However, the court stated that defendant's actions in this case constituted "society and a parent's worst nightmare," in which "[a] little girl playing out in her own backyard, in her own neighborhood, gets victimized by a predatory neighbor." Addressing defendant, the court stated: "I think you're an exceptionally dangerous person. And—and your conduct was so outrageous and beyond the pale that society needs to be protected from you." The court explained that it could have sentenced defendant

4

to 60 years in prison but "gave credit" to defendant for pleading guilty and saving L.A. from further trauma. The court denied defendant's motion, describing defendant's sentence as "appropriate and just."

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant argues that his 45-year prison sentence is excessive because the trial court (1) did not consider his rehabilitative potential, (2) failed to consider "the substantial period in which he led a law-abiding life," and (3) sentenced him to a "*de facto* life sentence" without finding he was "beyond rehabilitation."

¶ 24    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102.

¶ 25    The rehabilitative potential of a defendant is only one of many factors a trial court must weigh in deciding a sentence. *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010). The trial court is not required to expressly outline its reasons for imposing a certain sentence, nor must it explicitly find that the defendant lacks rehabilitative potential. *Flores*, 404 Ill. App. 3d at 159. Additionally, "a trial court need not place greater weight on a defendant's rehabilitative potential than on the seriousness of the offense and the need to protect the public." *People v. McCain*, 248 Ill. App. 3d 844, 854 (1993).

¶ 26    A trial court must consider both mitigating and aggravating factors when determining an appropriate sentence. *People v. Palmer*, 162 Ill. 2d 465, 483-84 (1994). However, a sentencing

court is not obligated to recite and assign value to each factor it relies on. *McCain*, 248 Ill. App. 3d at 854. We will presume the court considered all relevant factors and mitigating evidence before it absent explicit evidence to the contrary. *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43.

¶ 27    "The trial court has broad discretionary powers when selecting an appropriate sentence." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37. We accord great deference to the trial court's sentencing decision "because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." (Internal quotation marks omitted.) *People v. Klein*, 2022 IL App (4th) 200599, ¶ 38.

¶ 28    The weight to be given aggravating and mitigating factors is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. A court abuses its discretion "where [its] sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). "[T]he reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Stacey*, 193 Ill. 2d at 209. A sentence within the range prescribed by the legislature is presumed to be proper. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 29    A. Consideration of Defendant's Rehabilitative Potential

¶ 30    Defendant argues that his sentence is excessive, in part, because the trial court failed to consider his rehabilitative potential.

¶ 31    The trial court did not specifically mention defendant's rehabilitative potential. However, the court was not required to do so. See *McCain*, 248 Ill. App. 3d at 854. Nevertheless, the court expressly stated that it considered the PSI. As a result, we can presume that the court considered defendant's rehabilitative potential. See *McCain*, 248 Ill. App. 3d at 853 (where the sentencing court examines the PSI, it is presumed to have taken into account the defendant's rehabilitative potential).

6

¶ 32          Moreover, the trial court considered the evidence defendant contends shows his rehabilitative potential: his guilty plea and expression of remorse. In sentencing defendant, the court stated that it gave "serious weight" to the fact that defendant pled guilty and acknowledged that defendant admitted his wrongdoing very early in the case. Nevertheless, the court determined that a 45-year prison sentence was necessary to "protect society" from defendant, whom the court described as an "an extremely dangerous person." Based on this record, defendant failed to establish that the court abused its discretion in ruling that the seriousness of his offense and the need to protect the public outweighed any rehabilitative potential defendant may have demonstrated.

¶ 33          B. Consideration of Defendant's "Law-abiding" Period

¶ 34          Defendant also asserts that the trial court failed to consider as a mitigating factor that he "has led a law-abiding life for a substantial period of time before the commission of the present crime." See 730 ILCS 5/5-5-3.1(a)(7) (West 2022). In support, defendant points out that he had no convictions between 1994 and 2017 or after 2017 until this case.

¶ 35          At the sentencing hearing, the trial court stated that it reviewed the aggravating and mitigating evidence presented by the parties and found no mitigating factors applied. Defendant contends that, based on this statement, the court failed to consider that he had law-abiding periods in his life. We disagree. A court's statement that no mitigating factors apply does not indicate that the court failed to consider mitigating factors. See *People v. Newbill*, 374 Ill. App. 3d 847, 854 (2007) ("[S]tating that no statutory factors in mitigation *apply* is different than stating that the trial court did not *consider* a mitigating factor." (Emphases in original.)).

¶ 36          In addition to aggravating and mitigating evidence, the trial court stated that it considered defendant's PSI and arguments from counsel. Defendant's PSI showed his extensive criminal history, which included several felony convictions between 1983 and 1994, as well as a conviction in 2017. Defense counsel argued that defendant should be given a lighter sentence, in part,

7

because most of his criminal history was "old." At the sentencing hearing and the hearing on defendant's motion to reconsider his sentence, the court referred to defendant's criminal history as "very old" and "of a vintage era." Thus, the record belies defendant's assertion that the court failed to consider that he had "law-abiding" periods in his life. To the contrary, the court recognized and acknowledged that most of defendant's criminal convictions occurred long ago.

¶ 37                                    C. "*De Facto* Life Sentence"

¶ 38          Finally, defendant argues that his 45-year prison sentence is a "*de facto* life sentence" because he is 57 years old and, therefore, has "no chance for release due to his age." He contends that the trial court could not sentence him to a "*de facto* life sentence" without finding that he was "beyond rehabilitation."

¶ 39          First, the phrase "*de facto* life sentence" is a term of art relevant to eighth amendment (U.S. Const., amend. VIII) jurisprudence relating to juvenile offenders. See *People v. Buffer*, 2019 IL 122327, ¶ 40 (finding a prison term of more than 40 years imposed on a juvenile constitutes a *de facto* life sentence). While defendant contends that the phrase can be applied to adult defendants, his argument that the trial court was required to find that he was "beyond rehabilitation" before imposing its sentence is without merit. When sentencing an adult, the court is not required to "explicitly find that the defendant lacks rehabilitative potential." *Flores*, 404 Ill. App. 3d at 159. No such finding is required, even if the court sentences the defendant to life in prison. *People v. Morgan*, 250 Ill. App. 3d 728, 735 (1993).

¶ 40          Furthermore, the trial court was not required to consider defendant's advanced age as a mitigating factor or "fashion a prison sentence that is within the defendant's life expectancy." *People v. Thurman*, 2024 IL App (4th) 230391-U, ¶ 81. Where the circumstances of a case justify a lengthy prison sentence, a court need not sentence an older offender to a shorter prison term simply because the defendant, due to his age, will likely never be released from prison. See *Thurman*, 2024 IL App

8

(4th) 230391-U, ¶ 81.

¶ 41       Defendant is effectively asking us to reweigh the sentencing factors and give his rehabilitative potential more weight than any other factor. However, it is not our duty to reweigh the factors involved in the trial court's sentencing decision. See *Stacey*, 193 Ill. 2d at 209. Moreover, it was entirely appropriate for the court not to weigh defendant's rehabilitative potential more heavily than the seriousness of defendant's crime. See *McCain*, 248 Ill. App. 3d at 854. Given defendant's crime, his 45-year prison sentence is neither "greatly at variance with the spirit and purpose of the law" nor "manifestly disproportionate to the nature of the offense." See *Stacey*, 193 Ill. 2d at 210. Accordingly, the court did not abuse its discretion in sentencing defendant.

¶ 42                            III. CONCLUSION

¶ 43       For the reasons stated, we affirm the trial court's judgment.

¶ 44       Affirmed.