NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
April 29, 2022
Carla Bender
4th District Appellate
Court, IL

2022 IL App (4th) 200527-U

NO. 4-20-0527

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRYANT JENNINGS, | ) | No. 17CF284 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) defendant's claim of ineffective
                assistance of counsel failed where defendant failed to demonstrate prejudice;
                (2) the trial court did not rely on irrelevant and unreliable evidence in aggravation
                or consider a factor inherent in the offense in aggravation; and (3) the trial court
                did not abuse its discretion in sentencing defendant to a term of imprisonment
                within the statutory guidelines.

¶ 2    In September 2017, the State charged defendant, Bryant Jennings, with one count

of unlawful delivery of a controlled substance and one count of unlawful possession of a weapon

by a felon.  Following a bench trial, the trial court found defendant guilty of unlawful delivery of

a controlled substance.  In June 2020, the court sentenced defendant to 15 years' imprisonment.

¶ 3    Defendant appeals, arguing (1) he received ineffective assistance of counsel

where counsel opened the door to evidence that he allegedly engaged in repeated criminal

activity, which served no purpose other than to show his propensity to commit crimes; and

(2) this court should remand for resentencing because the trial court relied on unreliable, irrelevant evidence and improperly considered in aggravation a factor implicit in the offense, or alternatively, this court should reduce defendant's sentence where the trial court gave undue weight to aggravating factors and inadequate consideration to rehabilitative potential and remorse. For the following reasons, we affirm the trial court's judgment.

¶ 4                                        I. BACKGROUND

¶ 5        In September 2017, the State charged defendant with one count of unlawful delivery of a controlled substance and one count of unlawful possession of a weapon by a felon.

¶ 6                                        A. Bench Trial

¶ 7        Over the course of two nonconsecutive days, the trial court held a bench trial and heard the following evidence.

¶ 8                                        1. *Lenard Brown*

¶ 9        Lenard Brown testified he worked with Detective Kevin Raisbeck as a confidential source for controlled buys. On September 19, 2017, Lenard purchased cocaine from defendant in Livingston County for the police. According to Lenard, he considered defendant family. Prior to purchasing the drugs, Lenard spoke to defendant on the phone and they exchanged text messages. Lenard testified his wife drove him to meet Detective Raisbeck at a rest stop. According to Lenard, Detective Raisbeck searched him, his wife, and the car and found nothing illegal. Lenard was fitted with an overhear device. Lenard then met defendant in a gas station parking lot in Pontiac. According to Lenard, his wife went inside the gas station and Lenard met defendant near the trunk of a car. Lenard testified defendant pulled the cocaine out of the trunk of the car and handed it to Lenard. Lenard identified People's exhibit No. 2 as

the drugs he purchased from defendant. Lenard subsequently gave the drugs to Detective Raisbeck.

¶ 10    Lenard testified that prior to becoming a confidential source, he was pulled over by police and taken to the police station for an alleged delivery of a controlled substance. Lenard worked out a deal with the police to avoid going to jail by helping them obtain drugs from someone else. Lenard testified Detective Raisbeck did not give him money for the controlled buy. According to Lenard, he did not give defendant any money when defendant gave Lenard the cocaine.

¶ 11    On redirect examination, the following exchange occurred:

"Q. How was it that you knew you could purchase cocaine from or get cocaine from [defendant]?

A. Um, because I was waiting on it.

Q. I couldn't hear you.

A. I was already waiting on him to give it to me.

Q. Is it fair to say you've had previous business—

MR. TYSON [(DEFENSE COUNSEL)]: Objection.

THE COURT: What's the objection?

MR. TYSON: He's trying to bring in uncharged conduct against [defendant].

THE COURT: Well, I didn't hear the whole question.

MR. REGNIER [(ASSISTANT STATE'S ATTORNEY)]: Right. If I may, Judge. The question was [']is it fair that you've had previous business dealings with [defendant].['] And the

- 3 -

reason I'm inquiring, Judge, is because of the questions Mr. Tyson posed about why this was not purchased in this case. There was [*sic*] several questions about how this witness did not receive any [official advanced fund] money or recorded funds.

THE COURT: As to prior bad acts, no. I'm not going to sustain the objection. It's overruled because I think the door was opened up with that line of questioning. Go ahead.

MR. REGNIER: Thank you.

Q. Sir, did you have previous dealings with [defendant]?

A. Yes.

Q. Okay. Had you guys exchanged money?

A. Yes.

Q. Yes? Okay. Had there been an ongoing relationship between the two of you regarding the sale of cocaine?

A. Yes."

¶ 12 The State also played an audio recording from the overhear device Detective Raisbeck placed on Lenard. A cell phone can be heard ringing and Lenard identified his voice as the person answering the phone call. Lenard is heard arranging to meet the caller at a gas station. Lenard identified a female voice on the overhear as that of his wife. A little later, Lenard can be heard talking on the phone again arranging to meet "BJ" at the Circle K gas station off exit 217. On the overhear, Lenard's wife can be heard indicating she was going inside the store. Then another voice later identified as defendant says to Lenard, "I gave you five balls and a half of powder." Defendant then said, "You got a ball in there for you to make some money with."

¶ 13                                        2. *Detective Stephen Brown*

¶ 14            Detective Stephen Brown testified to working in the Bloomington Police

Department's narcotics investigation unit for 10 years.  On September 19, 2017, Detective

Brown assisted Detective Raisbeck with an investigation of defendant.  Detective Brown was

parked in a Circle K gas station parking lot in Dwight as part of a surveillance team.  Detective

Brown observed a tan Toyota driven by defendant pull into the parking lot.  Defendant's "vehicle

circled through the parking lot there and then drove east down the street into the parking lot at a

Casey's gas station[.]"

¶ 15            Detective Brown knew a confidential source was in the area and a few minutes

later the tan Toyota returned to the Circle K parking lot and pulled in next to a vehicle occupied

by Lenard and his wife.  According to Detective Brown, Lenard's wife walked toward the gas

station while Lenard and defendant exited their vehicles and met near the rear of the tan Toyota.

When Lenard and defendant met by the rear of the Toyota, Detective Brown testified, "I

observed the trunk lid open and then what looked to me to be an exchange of something.  I

couldn't see what it was."  After the exchange, defendant got into his vehicle and left the parking

lot.  According to Detective Brown, Lenard was in the passenger side of his vehicle when

Detective Brown left to follow defendant.

¶ 16                                        3. *Detective Kevin Raisbeck*

¶ 17            Detective Kevin Raisbeck testified that, in September 2017, he was with the Vice

Unit and used confidential sources to conduct controlled buys.  Detective Raisbeck investigated

Lenard and arrested him for selling "a couple of grams of crack cocaine."  Detective Raisbeck

knew Lenard had previously been arrested and gone to prison for selling drugs.  Following his

arrest on September 12, 2017, Lenard told Detective Raisbeck he had information to provide and

did not want to go back to prison. Detective Raisbeck extended the offer for Lenard to help himself by completing a controlled purchase. According to Detective Raisbeck, Lenard agreed to work as a confidential source and identified defendant as one of his sources for cocaine. Raisbeck testified that charges were not filed against Lenard after he completed the controlled buy.

¶ 18    According to Detective Raisbeck, he coordinated the controlled buy with other officers and Lenard. Detective Raisbeck testified the police generally provided money to purchase the drugs in a controlled buy so they could record the serial numbers for comparison with any currency found on the target of the buy. However, in this case Lenard informed Detective Raisbeck he had already given defendant $1200 dollars for drugs that were to be delivered.

¶ 19    On September 19, 2017, Detective Raisbeck met Lenard in Bloomington and then traveled to a rest stop off of Interstate 55. While at the rest stop, Lenard received a phone call from defendant and Detective Raisbeck expected the controlled buy to occur. According to Detective Raisbeck, he searched Lenard, Lenard's wife, and Lenard's car. Detective Raisbeck testified he was aware that drugs could be in fairly small packages or in numerous compartments in a vehicle, which were considerations he kept in mind when searching a vehicle. Detective Raisbeck testified he did a full pat down search of Lenard prior to the controlled buy. Detective Raisbeck had Lenard's wife turn her pockets inside out and shake out her pants, shirt, and bra. Detective Raisbeck testified he did not look into any body cavities on either Lenard or his wife. According to Detective Raisbeck, he spent approximately five minutes searching Lenard's vehicle. Detective Raisbeck acknowledged he did not know every "crook and cranny" of the vehicle and conceded they could have had drugs in the vehicle.

¶ 20        Detective Raisbeck activated a covert recording device for Lenard to use and instructed Lenard and his wife to drive to the Circle K gas station in Dwight. Detective Raisbeck followed Lenard's vehicle until other officers could observe their arrival at the Circle K gas station. According to Detective Raisbeck, Lenard's vehicle did not stop until it reached the gas station.

¶ 21        After the transaction between defendant and Lenard occurred, Detective Raisbeck was informed officers had separated defendant and Lenard, so Detective Raisbeck returned to the gas station to meet Lenard. Lenard gave Detective Raisbeck one bag that contained six smaller bags of suspected cocaine. Detective Raisbeck identified People's exhibit No. 2 as the cocaine Lenard gave him following the controlled buy. According to Detective Raisbeck, one bag contained approximately 15 grams of powder cocaine and "five smaller bags that contained approximately 15 grams of crack cocaine." The parties stipulated to the admission of a lab report indicating the bags from the controlled buy included 17.2 grams of cocaine.

¶ 22                        B. Verdict and Sentencing

¶ 23        Following closing arguments, the State moved to dismiss the charge of unlawful possession of a weapon by a felon. The trial court found defendant guilty of unlawful delivery of a controlled substance and ordered a presentence investigation (PSI) report. The court noted that, although Detective Raisbeck did not perform a thorough body cavity search of Lenard, the controlled buy involved "a pretty significant amount of drugs." The court found Lenard to be a credible witness. In finding Lenard credible, the court acknowledged his criminal record and noted he "was able to provide access to bigger fish[.]" The court noted Lenard's testimony was corroborated by Detectives Raisbeck and Brown. The court noted Detective Brown identified defendant as the person Lenard met with at the Circle K. The court further addressed the

overhear recording, stating defendant was identified as the only person Lenard spoke to at the Circle K. The court opined that the State's case was "very strong" and noted defendant's statement on the overhear that he "[g]ave you [(Lenard)] five balls and a half of powder and an additional ball to make some money at." The court noted Detective Raisbeck identified defendant as the person he spoke with after defendant was arrested and defendant conceded it was his phone number that Lenard called during the controlled buy. Finally, the court noted defendant's argument that no money exchanged hands during the controlled buy. The court found this argument to be an attempt to "muddy up the waters." The court explained that no money exchanged hands because Lenard had already paid for the drugs.

¶ 24        The PSI indicated defendant's criminal history included a 1986 conviction for manufacturing/delivery of cannabis, a 1994 conviction for conspiracy to distribute cocaine and cocaine base, and a 2011 conviction for attempted check fraud. According to the PSI, defendant stated he was helping his nephew avoid eviction by providing him with drugs to sell. Defendant admitted what he did was wrong and he felt bad about it. Defendant graduated high school and took some college-level business classes before dropping out after one year. Defendant worked for B and C Marketing for the prior six years and trained at-risk young people to do something positive with their lives.

¶ 25        Defendant had a close relationship with his five siblings and lived with his 84-year-old mother. Defendant had four children and two step-children. Defendant reported he drank alcohol five days per week and used cannabis daily. Defendant reported he was "a functional cocaine addict for the past 30 years." Defendant was willing to participate in substance-abuse treatment.

¶ 26   In June 2020, the trial court held a sentencing hearing. The State recommended a sentence of 18 years' imprisonment, arguing defendant had "been convicted of this same type of activity twice now." The State further argued defendant was part of the problem that caused others in central Illinois to get wrapped up in drugs. The State argued, "In this case, he's bringing down an amount of a substance which in this case classifies as a Class X amount and just drops it off in Dwight for delivery here in Central Illinois."

¶ 27   Defense counsel first noted defendant's conviction for manufacture and delivery of cannabis occurred 34 years before and the conviction for conspiracy to distribute cocaine occurred 24 years before. Defense counsel argued the sale of cocaine to Lenard was "a one-time thing" and defendant was not engaged in an ongoing distribution of drugs. Defense counsel further argued defendant was gainfully employed and had dependents. Finally, counsel argued defendant was remorseful and asked for the minimum term of six years' imprisonment.

¶ 28   The trial court acknowledged that probation was not an option and there was a mandatory minimum sentence of six years' imprisonment. The court considered the seriousness of the offense and noted it was a Class X felony. The court, referring to section 411 of the Illinois Controlled Substances Act (720 ILCS 570/411 (West 2020)), stated, "And specifically the legislature directs the Court to consider that it is their opinion that the types of offenses they deem most damaging to the peace and welfare of the citizens of Illinois and which warrant the most severe penalties include delivery of the most highly toxic controlled substances in Schedule I and Schedule II; and these are Schedule II controlled substances." The court noted the confidential source, who the court found to be credible, appeared to be ashamed of conducting the controlled buy because he was defendant's family. The court stated that, although that did not excuse defendant's conduct, it made the whole situation "extremely unfortunate."

¶ 29        The trial court considered defendant's prior criminal history as a factor in aggravation. Specifically, the court stated,

"You know, this isn't your first go around with the law. And, you know, people don't just happen to know where they can pick up more than 15 grams of cocaine to help out a relative. So you are obviously engaged in this particular case in conduct that even though your prior record is pretty old, you are still engaging in at least contacts with people who have the ability to distribute these very serious Schedule II controlled substances within the community."

The court concluded deterrence was a strong factor. The court noted defendant's apprehension was the result of an investigation and a controlled buy. The court stated, "You are up in Chicago, why you need to come down here to distribute what in Livingston County is a pretty large amount of cocaine. We see people on the highway with larger sums, larger amounts of controlled substances and other drugs. But generally, you know, people have smaller amounts in this community." The court expressed concern about the amount of cocaine defendant delivered and noted it went to the seriousness of the offense and to deterrence.

¶ 30        The trial court stated it was unsure whether any statutory mitigating factors applied, but it acknowledged defendant's remorse. The court went on as follows:

"Otherwise there's really no other strong factors in mitigation. So this kind of boils down to a really serious crime, really serious for Livingston County, but in any event, still a very serious Class X felony delivery of a Schedule II controlled

substance by someone who A, should have known better, B, has a very bad prior record, and C, has no ties to this community.

So in regards to not an ongoing operation, I guess I don't have evidence that you are, you know, the kingpin in Livingston County. I would agree with that. But you certainly had some communication with the controlled, or the confidential source because the cocaine had already been paid for."

The court sentenced defendant to a term of 15 years' imprisonment, followed by a 3-year term of mandatory supervised release.

¶ 31        This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33        On appeal, defendant argues (1) he received ineffective assistance of counsel where counsel opened the door to evidence that he allegedly engaged in repeated criminal activity, which served no purpose other than to show his propensity to commit crimes and (2) this court should remand for resentencing because the trial court relied on unreliable, irrelevant evidence and improperly considered in aggravation a factor implicit in the offense, or alternatively, this court should reduce defendant's sentence where the trial court gave undue weight to aggravating factors and inadequate consideration to rehabilitative potential and remorse.

¶ 34                            A. Ineffective Assistance of Counsel

¶ 35        Defendant first argues he received ineffective assistance of counsel because counsel opened the door to evidence that he allegedly engaged in repeated criminal activity. Defendant asserts the evidence only served to show defendant's propensity to commit crimes.

Specifically, defendant argues counsel asked Lenard on cross-examination whether he obtained the narcotics from defendant without exchanging money. The State argues defendant has failed to overcome the presumption that defense counsel's performance was a matter of sound trial strategy. Alternatively, the State argues defendant failed to demonstrate prejudice.

¶ 36        A claim of ineffective assistance of counsel is governed by the familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. The deficient-performance prong requires a defendant to show that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. The prejudice prong requires a showing that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id.* A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel. *Id.*

¶ 37        Our review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Id.* A defendant is entitled to reasonable representation, and a mistake in strategy or judgment does not, by itself, render the representation incompetent. *People v. Fuller*, 205 Ill. 2d 308, 331, 793 N.E.2d 526, 542 (2002).

¶ 38        Here, defense counsel cross-examined the confidential source regarding payment for the drugs obtained during the controlled buy. Counsel established Detective Raisbeck did not

provide money for the controlled buy and further established that Lenard did not give defendant money at the controlled buy. The State then sought to question Lenard as to whether he had previous business dealings with defendant. Defense counsel objected and the trial court overruled the objection as to prior bad acts, finding defense counsel opened the door by asking about the fact that no money exchanged hands during the controlled buy.

¶ 39 Defendant's theory of the case was that Lenard sought to avoid prison by setting up defendant and giving the police his own cocaine. The fact that no money exchanged hands during the controlled buy would provide compelling support for such a theory. Defendant argues that defense counsel could have pursued this theory by arguing the State presented no evidence that money exchanged hands rather than eliciting this testimony from Lenard.

¶ 40 The State argues trial counsel's cross-examination of Lenard was a matter of trial strategy. Specifically, the State asserts defense counsel highlighted the facts that no money exchanged hands during the controlled buy and no prerecorded funds were recovered from defendant. According to the State, this helped bolster the argument that Lenard avoided jail by setting defendant up and giving his own cocaine to the police. The State also argues evidence of the prior drug transactions was admissible to establish the relationship of the two parties and to explain an aspect of the crime that would be otherwise unclear. In support of its argument, the State cites *People v. Manuel*, 294 Ill. App. 3d 113, 689 N.E.2d 344 (1997). Defendant asserts *Manuel* is inapplicable but does not explain why. In *Manuel*, the defendant argued the trial court erred by allowing the State to introduce evidence of the defendant's previous drug deals with the confidential source. *Id.* at 123. The appellate court determined the evidence of previous drug deals were not "other crimes" evidence. *Id.* at 124. The appellate court observed, "Though the prior deals were not part of the same episode, they were a necessary preliminary to the current

offense." *Id.* The appellate court also determined that the evidence of prior deals explained an aspect of the crime not otherwise understandable. *Id.* Specifically, the evidence of prior deals explained that the defendant delivered more cocaine than bargained for to make up for a prior deal where the quality of the cocaine had been bad. *Id.* Additionally, the defendant made references to the defendant being "ensnared" by the government and to the confidential source's desire to cut himself a better deal. *Id.* The appellate court concluded the State was entitled to show the defendant's "willingness to be involved with someone he had been dealing with." *Id.*

¶ 41 Here, as in *Manuel*, the evidence of prior drug deals between defendant and Lenard were relevant to show defendant's course of conduct and his illicit relationship with Lenard. Additionally, the evidence explained why no money exchanged hands during the controlled buy. As discussed above, we must indulge in a strong presumption that counsel's performance was a matter of trial strategy. *Strickland*, 466 U.S. at 689. Moreover, a mistake in strategy or judgment does not, by itself, render the representation incompetent. *Fuller*, 205 Ill. 2d at 331. Under these circumstances, defense counsel may well have deemed the risk of other crimes evidence coming in during a bench trial worth affirmatively presenting evidence to the trial court that no money exchanged hands during the controlled buy.

¶ 42 However, even if we assume defense counsel provided ineffective assistance by opening the door to the evidence that defendant had previously sold cocaine to Lenard, defendant has failed to demonstrate prejudice. In finding defendant guilty, the trial court opined the case was "very strong." The court found Lenard to be a credible witness. The court noted Lenard's testimony was corroborated by Detectives Raisbeck and Brown. Detective Brown identified defendant as the person Lenard met with at the Circle K. Defendant was identified as the only person Lenard spoke to at the Circle K. On the overhear recording defendant stated, "I gave you

five balls and a half of powder." Defendant then said, "You got a ball in there for you to make some money with." Detective Raisbeck identified defendant as the person he spoke with after defendant was arrested and defendant conceded it was his phone number that Lenard called during the controlled buy. Under these circumstances, we cannot say the outcome of the proceeding would have been different if defense counsel had not asked Lenard whether money was exchanged at the controlled buy.

¶ 43        Defendant asserts he can demonstrate prejudice and points to the trial court's statement that Lenard provided access to "bigger fish." Defendant further points to the fact that the court stated no money exchanged hands because Lenard had already paid for the drugs. Defendant asserts these statements indicate the court found defendant committed the charged offense and had also committed other bad acts. These statements were made in addressing defendant's arguments that Lenard was incredible because he had a criminal record and that no money exchanged hands during the controlled buy. The court found the former argument unpersuasive and the latter argument to be an attempt to "muddy up the waters." Taking the court's comments in context, we conclude defendant has failed to show prejudice. Even if defense counsel had not asked Lenard whether money exchanged hands at the controlled buy and the State therefore did not elicit that Lenard and defendant had an ongoing relationship regarding the sale of cocaine, there was ample evidence to convict defendant of unlawful delivery of a controlled substance. As discussed above, defendant was identified by multiple witnesses as the person Lenard met at the gas station to collect the cocaine, Lenard testified defendant gave him the cocaine, and defendant could be heard on the overhear recording stating, "I gave you five balls and a half of powder." Under these circumstances, we cannot say there was a reasonable

probability that, but for counsel's alleged deficient performance, the outcome of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36.

¶ 44                                    B. Sentence

¶ 45          Next, defendant contends the trial court erred by relying on unreliable, irrelevant evidence and improperly considered in aggravation a factor inherent in the offense when it sentenced defendant to 15 years' imprisonment. Alternatively, defendant argues the court abused its discretion by giving undue weight to the seriousness of the offense and insufficient weight to the factors in mitigation. Defendant acknowledges he forfeited his sentencing claims by failing to preserve the claims before the trial court. However, defendant asks this court to review his claims under the plain-error doctrine.

¶ 46          Under the plain-error doctrine, the defendant must first demonstrate a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* We turn first to whether a clear or obvious error occurred.

¶ 47          A trial court's sentencing decisions are given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. We will disturb a sentence within the statutory limits for the offense only if the trial court abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010). A court abuses its discretion when imposing a sentence "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000).

¶ 48        The court is not required to explicitly outline the factors considered for sentencing

and we presume the court considered all mitigating factors absent explicit evidence to the

contrary. *People v. Meeks*, 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14 (1980). Each sentencing

decision must be based on a consideration of factors including "the defendant's credibility,

demeanor, general moral character, mentality, social environment, habits, and age." *People v.

Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). The trial court is better able to weigh these

factors, having observed the defendant and proceedings. *Id.* We will not substitute our judgment

for that of the trial court merely because we would have balanced the factors differently. *Id.*

¶ 49        In determining an appropriate sentence, the trial court may consider the

seriousness, nature, and circumstances of the offense, including the nature and extent of the

elements of the offense. *People v. Saldivar*, 113 Ill. 2d 256, 271-72, 497 N.E.2d 1138, 1144

(1986). However, "it is well established that a factor inherent in the offense should not be

considered as a factor in aggravation at sentencing." *People v. Dowding*, 388 Ill. App. 3d 936,

942, 904 N.E.2d 1022, 1028 (2009). The prohibition against consideration of a factor inherent in

the offense " 'is based on the assumption that, in designating the appropriate range of

punishment for a criminal offense, the legislature necessarily considered the factors inherent in

the offense.' " *People v. McGath*, 2017 IL App (4th) 150608, ¶ 64, 83 N.E.2d 671 (quoting

*People v. Phelps*, 211 Ill. 2d 1, 12, 809 N.E.2d 1214, 1220 (2004)).

¶ 50        "A sentence based on improper factors will not be affirmed unless the reviewing

court can determine from the record that the weight placed on the improperly considered

aggravating factor was so insignificant that it did not lead to a greater sentence." *People v.

Heider*, 23 Ill. 2d 1, 21, 896 N.E.2d 239, 251 (2008). In determining whether the court afforded

an improper factor significant weight such that remand would be required, this court may

consider "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute." *Dowding*, 388 Ill. App. 3d at 945.

¶ 51    Defendant first argues the trial court erred by relying on unreliable and irrelevant evidence in aggravation. Specifically, defendant contends the court relied on unreliable and irrelevant evidence that (1) defendant was "still engaging" with other drug dealers, (2) defendant did not have ties to the community, and (3) defendant, as opposed to most drug dealers, brought a larger amount of narcotics to the community. However, at trial Lenard testified that he had an ongoing relationship with defendant regarding the sale of cocaine. Additionally, the trial court pointed out that "people don't just happen to know where they can pick up more than 15 grams of cocaine to help out a relative." Given that defendant obtained and delivered more than 15 grams of cocaine to Lenard, we cannot say it was error for the court to conclude defendant was still engaging in contact with other drug dealers.

¶ 52    Defendant argues that the trial court's conclusion that defendant did not have ties to the community was contravened by the record. Defendant asserts he "patently had ties to Livingston County, as Lenard was his nephew who lived in Bloomington." Leaving aside the fact that Bloomington is located in McLean County, not Livingston County, the trial court's single comment that defendant had no ties to the community must be read in context. The court made the single comment after discussing its concerns with the amount of drugs defendant delivered. Read in context, the court was concerned that the amount of drugs defendant delivered was not for individual use, but rather was for further delivery in the community. The court noted that people in the community usually had smaller amounts and "[w]e see people on the highway with larger sums." The court was addressing defendant's role in the larger context

- 18 -

of the problem of drug trafficking. Defendant also argues no evidence supported the court's "finding" that people in the community usually had smaller amounts of drugs. However, this comment was not a factual finding made by the court but was an observation about the larger problem of drug trafficking.

¶ 53    Defendant argues that the trial court improperly considered a factor inherent in the offense when it observed that defendant remained in contact with drug suppliers. Specifically, defendant asserts that the trial court subjected him to a double enhancement when it inferred he was "still engaging" with other drug dealers as an aggravating factor. To the extent that the court's statements involved factors inherent in the offense of unlawful delivery of a controlled substance, such as the harm selling drugs causes to the community or that defendant remained in contact with drug suppliers, our review of the record shows there was no error. Although the court addressed the harm to the community, "[i]t is not improper *per se* for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking." *People v. McCain*, 248 Ill. App. 3d 844, 852, 617 N.E.2d 1294, 1300 (1993). "[F]actors inherent in the offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case. [Citations.] Thus, a trial court may discuss the impact a drug offense has on the community without subjecting the defendant to double enhancement." *McGath*, 2017 IL App (4th) 150608, ¶ 73. The court was explaining the reasoning behind the sentence it imposed and the harm to the community was a relevant consideration. "Commenting on the problems caused by drug-related crime encourages rehabilitation by providing a context in which a defendant may develop feelings of remorse." *McCain*, 248 Ill. App. 3d at 852.

¶ 54    In the alternative, defendant argues this court should find defendant's sentence was excessive. Defendant asserts the trial court gave undue weight to aggravating factors and

discounted the weight of mitigating factors. We presume the trial court considered all relevant mitigating factors. *Meeks*, 81 Ill. 2d at 534. Moreover, we will not substitute our judgment for that of a trial court merely because we may have weighed the factors differently. *Fern*, 189 Ill. 2d at 53. Here, defendant faced a mandatory minimum sentence of 6 years' imprisonment and a maximum sentence of 30 years' imprisonment. The trial court noted defendant's criminal history, which included prior drug-related felonies, and deterrence as factors in aggravation. As discussed above, the court addressed its concerns that defendant delivered more than 15 grams of cocaine. The court further considered defendant's remorse as a nonstatutory factor in mitigation. The court sentenced defendant to a term of 15 years' imprisonment. Given these circumstances, we cannot say a 15-year sentence within the statutory limits was greatly at variance with spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Crenshaw*, 2011 IL App (4th) 090908, ¶ 22, 959 N.E.2d 703. Accordingly, we find the trial court did not abuse its discretion in sentencing defendant to a term well within the statutory guidelines and we affirm the trial court's judgment.

¶ 55                                    III. CONCLUSION

¶ 56            For the reasons stated, we affirm the trial court's judgment.

¶ 57            Affirmed.